UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Casey Ray Christianson, | Civil No. 20-565 (DWF/LIB) |
| Plaintiff, | |
| v. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR ENTRY OF DEFAULT JUDGEMENT** |
| Eric Klang, individually and in his capacity as Chief of Police for the City of Pequot Lakes, et al., | |
| Defendants. | |

This matter was heard before the undersigned on January 7, 2021 upon Plaintiff's Motion for Default Judgment against Defendant John Babinski pursuant to Fed. R. Civ. P. 55(b)(2) (Doc. No. 104). (Doc. No. 111.) David Wilson of Wilson Law Group, 3019 Minnehaha Avenue, Minneapolis, Minnesota 55406, appeared on behalf of Plaintiff. There was no appearance on behalf of the Defendant.

**FINDINGS OF FACT**

1.   Plaintiff moved the Court to enter default judgment against Defendant John Babinski ("Babinski") (Doc. No. 104) after Magistrate Judge Leo I. Brisbois granted Plaintiff's Motion for Sanctions against Babinski (Doc. No. 102), including a judgment of default on all counts, pursuant to Fed. R. Civ. P. 55(a), based upon Babinski's "willful and knowing" violation of the Court's discovery orders (Doc. No. 102).

2.   The Clerk of Court entered the default against Defendant Babinski on November 23, 2021. (Doc. No. 103.)

3.      Plaintiff's Motion for Entry of Default Judgment complies with Fed. R. Civ. P. 55(b).

4.      Plaintiff initiated this case by filing a Complaint on February 20, 2020. (Doc. No. 1.) Babinski was a named defendant. (*Id.*) Babinski was personally served with a Summons and Complaint on February 29, 2020. (Doc. No. 9.) Babinski's Answer to the Complaint was due March 23, 2020. (*Id.*) There is no Answer on file.

5.      Beginning in the early fall of 2018 and through a period of several months, Babinski published to third parties false and malicious statements about Plaintiff, accusing him of committing crimes and impugning his character.

6.      The statements, which were communicated to third parties, specifically alleged that Plaintiff was a burglar who had broken into and stolen property from Defendant's property.

7.      The false and malicious statements caused irreparable injury to Plaintiff's reputation both as an individual and as a business owner in the tight-knit community where he lives and conducts his business. After Babinski's campaign started, Plaintiff barely left his house for eight months, fearful to encounter his fellow residents lest they believed him to be a burglar.

8.      Plaintiff's general damages, including mental anguish, humiliation, and reputational loss due to Babinski's false and malicious statements, amount to $100,000.

9.      Plaintiff also lost business, including 17 recurring customers who chose not to rehire him in 2019. He incurred $54,768 in lost accounts for 2019. Additionally, and

faced with a diminishing customer base, Plaintiff had to diversify and expand his service offerings by investing in pest control equipment and training at a cost of $25,000.

10. Plaintiff's special damages as the result of Babinski's false and malicious statements amount to $79,768.

11. Plaintiff incurred $23,912.50 in attorneys' fees and $2,105.58 in costs to prosecute his claim against Babinski.  (Doc. No. 112.)  These costs and fees exclude time and costs associated with any other defendant or in combination with Babinski.  (*Id.* ¶ 4.)

## CONCLUSIONS OF LAW

12. Babinski is in default and Plaintiff is entitled to default judgment.

13. When a court has determined that a party has defaulted, the factual allegations in the complaint, except those relating to damages, are taken as true.  *Cole v. Metro. Council HRA*, 686 N.W.2d 334, 337 (Minn. Ct. App. 2004).  The party seeking the default must simply establish that he has a prima facie case.  *See Hill v. Tischer*, 385 N.W.2d 329, 332 (Minn. Ct. App. 1986).

14. Under Minnesota tort law, to prevail on a claim of defamation, Plaintiff must demonstrate that Babinski made: "(a) a false and defamatory statement about the plaintiff; (b) in an unprivileged publication to a third party; (3) that harmed the plaintiff's reputation in the community."  *Maethner v. Someplace Safe, Inc.*, 929 N.W. 2d 868, 873 (Minn. 2019) (citing *Weinberger v. Maplewood Rev.*, 668 N.W.2d 667, 673 (Minn. 2003)).  Statements are defamatory per se if they, *inter alia*, falsely accuse a person of a crime.  *Longbehn v. Schoenrock*, 727 N.W.2d 153, 158 (Minn. Ct. App. 2007).  For

statements that are defamatory per se, "general damages are presumed" and a plaintiff can recover without any proof that the statements caused actual harm. *Id.*

15. In a claim for intrusion upon seclusion under Minnesota tort law, a Plaintiff must prove "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Swarthout v. Mut. Serv. Life Ins. Co.,* 632 N.W.2d 741, 744 (Minn.Ct.App.2001). Whether an intrusion is offensive depends on "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded," and "the number and frequency of the intrusive contacts." *Bauer v. Ford Motor Credit Co.*, 149 F.Supp.2d 1106, 1109 (D.Minn.2001). For the interference to be substantial, it must be "of the kind that would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object." *Swarthout*, 632 N.W.2d at 745.

16. The Court finds that Babinski's statements were false and defamatory, made in an unprivileged publication to a third party, and harmed Plaintiff's reputation in the community. The statements were also defamatory per se in as much as they imputed that Plaintiff had committed a crime. (*See, e.g.*, Doc. No. 1-1 at 3-4 ("Wood Decl.") ¶¶ 5, 9, 10; Doc. No. 1-1 at 5-6 ("Germane Decl.") ¶ 4; Doc. No. 1-1 at 7 ("Abramo Decl.") ¶¶ 2-3; Doc. No. 1-1 at 8-9 ("Christianson Decl.") ¶¶ 5-8.)

17. The Court also finds that Babinski's conduct constitutes an intrusion that is highly offensive into a matter in which Plaintiff has a legitimate expectation of privacy.

(*See, e.g.*, Doc. No. 1-1 at 3-4 ("Wood Decl.") ¶¶ 5, 9, 10; Doc. No. 1-1 at 5-6 ("Germane Decl.") ¶ 4; Doc. No. 1-1 at 7 ("Abramo Decl.") ¶¶ 2-3; Doc. No. 1-1 at 8-9 ("Christianson Decl.") ¶¶ 5-8.)

18. Plaintiff has demonstrated a prima facie case showing of defamation per se and intrusion upon seclusion; he has also substantiated his request for general damages for emotional harm, embarrassment, loss of good standing in the community, and the amount of special damages due to loss of business and necessary investments.

19. Plaintiff's request for attorneys' fees of $23,912.50 and costs of $2,105.58 is reasonable, particularly in light of Babinski's history of bad faith litigation and the expenses Plaintiff incurred to pursue a default judgment through multiple non-dispositive motions. Babinski is therefore liable to Plaintiff for attorneys' fees in the amount of $23,912.50 and costs of $2,105.58.

## ORDER

20. Plaintiff's Motion for Entry of Default Judgment against Defendant John Babinski (Doc No. [104]) is **GRANTED**.

21. Defendant John Babinski shall pay Plaintiff $179,768 and a judgment shall be docketed against Defendant.

22.     Defendant John Babinski shall pay Plaintiff reasonable attorneys' fees in the amount of $23,912.50 and costs of $2,105.58, which shall be incorporated into the final Judgment by the Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY**,

Dated:  January 12, 2022                     s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge