UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Casey Ray Christianson,                              Civil No. 20-565 (DWF/LIB)

          Plaintiff,

v.                                                                                  MEMORANDUM
                                                                                   OPINION AND ORDER
Eric Klang, individually and in his
capacity as Chief of Police for the City of
Pequot Lakes; City of Pequot Lakes;
Jonathan Babinski, Anonymous
Investigative Services LLC, Kurt
Schienbein; and Joshua Schienbein,

          Defendants.

_____

David L. Wilson, Esq., Eva Jean Rodelius Buer, Esq., Wilson Law Group, counsel for Plaintiff Casey Christianson.

Andrew Case, Esq., Elizabeth C. Henry, Esq., Francis J. Rondoni, Esq., Chestnut Cambronne PA, counsel for Defendant Jonathan Babinski.

_____

## INTRODUCTION

This matter is before the Court on Defendant Jonathan Babinski's motion for relief from judgment (Doc. No. 125) and Plaintiff Casey Ray Christianson's motion for sanctions (Doc. No. 141). For the reasons set forth below, the Court denies both motions.

## BACKGROUND

Over three years ago, Christianson brought this action against Babinski and five other Defendants. (Doc. No. 1 ("Compl.").) The allegations stemmed from a burglary that occurred at Babinski's properties in Nisswa, Minnesota. (Id. ¶¶ 19-21.) Babinski

hired private investigators to gather information about the burglary. (*Id.* ¶ 28.) When the private investigators did not find anything, Babinski approached Defendant Eric Klang, the Pequot Lakes Chief of Police, and asked him to investigate the burglary as a personal favor to him, despite the fact that the Pequot Lakes Police Department did not have jurisdiction to investigate outside of Pequot Lakes. (*Id.* ¶¶ 29-30, 89.) Christianson alleged that the investigation was unlawful, violated his constitutional rights, and subjected him to harassment. (*Id.* ¶¶ 1-4.)

Christianson also alleged that Babinski made false statements about him while Babinski was drinking at a local bar. (*Id.* ¶¶ 80-81.) Babinski told people that Christianson committed the burglary. (*Id.*) After police arrested the actual burglary suspects, Babinski continued to falsely state that Christianson somehow participated in the burglary. (*Id.* ¶ 83.) Christianson asserted three claims against Babinski: (1) conspiracy to deprive civil rights; (2) defamation; and (3) intrusion upon seclusion.

In March 2020, Babinski answered Christianson's Complaint, and asserted a counterclaim against Christianson for conspiracy to commit theft or burglary. (Doc. No. 4.) In October 2020, Christianson served his first set of interrogatories and document requests. (Doc. No. 39 at 2.) When Babinski responded, Christianson asserted that the responses were deficient and demanded that Babinski supplement his responses. (Doc. No. 40-4.)

A week later, Babinski's counsel sent a letter to Christianson's counsel, stating that Babinski was going to retain a different lawyer. (Doc. No. 40-5.) The letter noted that it would be more appropriate for the new counsel to handle the supplemental

responses. (*Id.*) A few weeks later, Christianson filed a motion to compel. (Doc. No. 38.) Babinski did not respond. In February 2021, the Court granted Christianson's motion to compel and ordered Babinski to supplement his responses within twenty-one days. (Doc. No. 48.)

The following month, Babinski's counsel, Richard Dahl, moved to withdraw as counsel, and the Court granted the request. (Doc. No. 62.) The Court concluded that good cause for withdrawal existed because Babinski had not paid Dahl for his services. (*Id.* at 1.) Moreover, Babinski had not communicated with Dahl from November 2020 until late February 2021. (*Id.* at 2.) Babinski's communication with Dahl in February 2021 was via text message, and Dahl asserted that this limited communication "ma[de] it impossible for [Dahl] to fully answer discovery in this case." (*Id.*) The Court provided Babinski with fourteen days to obtain new counsel. (*Id.* at 11.)

Babinski did not obtain new counsel during that time. Christianson then filed a motion for discovery sanctions. (Doc. No. 75.) The next day, Christianson's counsel spoke with Babinski on the phone about Babinski's outstanding discovery. (Doc. No. 131 ("Wilson Decl.") ¶ 17.) Babinski stated that he was meeting with an insurance representative the next week about obtaining coverage counsel. (*Id.*) Babinski also stated that he did not have time to go to Minnesota for a deposition, and Christianson's counsel informed him that that "was not an excuse for not answering [] discovery." (*Id.*)

The day before the hearing on Christianson's motion for discovery sanctions, Christianson's counsel emailed Babinski with a reminder of the hearing. (*Id.* ¶ 21.) In addition, Christianson's counsel left a voicemail on Babinski's personal cell phone,

reminding him of the hearing details. (*Id.*) Babinski did not appear at the hearing. The Court ordered Babinski to comply with the motion to compel by July 29, 2021. (Doc. No. 91 at 5.) The Court warned Babinski that further failure to comply could result in harsher sanctions "including, but not limited to, entry of default judgment in favor of [Christianson]." (*Id.*)

On September 28, 2021, Christianson filed a second motion for discovery sanctions. (Doc. No. 92.) Babinski did not respond to the motion. The Court noted that Christianson "made numerous attempts to engage Babinski in the discovery process, which included phone calls, voicemails, emails, letters, and a deposition notice." (Doc. No. 102 at 8.) Ultimately, the Court concluded that Babinski's noncompliance was willful and knowing. (*Id.* at 9.) The Court directed the Clerk of Court to enter default against Babinski and awarded Christianson's counsel $1,000.00 in costs and reasonable attorney's fees. (*Id.* at 12-13.) Christianson then moved for default judgment. (Doc. No. 104.) After a hearing, the Court granted the motion and ordered Babinski to pay Christianson $179,768.00. (Doc. No. 118.)

Almost exactly a year later, Babinski now moves for relief from judgment. (Doc. No. 125.) Babinski argues that he "did not expect to receive communications related to this litigation" at the email address on file and thus he did not monitor the email. (Doc. No. 127 ("Babinski Decl.") ¶ 3.) He further asserts that, in April 2021, he moved from the Crooked Creek Guest Ranch at 76 Fir Road to 21 Tiehack Court and therefore did not receive many of the documents related to this case that were sent to 76 Fir Road. (*Id.* ¶ 4.) The documents he did receive "appeared to be focused on Defendant Erik

4

Klang," so he did not review them. (*Id.* ¶ 4-5.) Lastly, he notes that he was in California from December 28, 2021, through March 27, 2022, around the time of the default decision. (*Id.* ¶ 9.)

In response, Christianson notes that public records show that Babinski was personally served in a separate case at the 76 Fir Road address on December 30, 2021, *after* Babinski alleged that he had moved from that residence and during the time that he asserted he was in California. (Wilson Decl. ¶ 32.) Further, between April 2021 and June 2021, Babinski registered titles for eight vehicles at the 76 Fir Road address. (Doc. No. 130 ("Willingham Decl.") ¶ 3, Ex. 1.) Lastly, on December 12, 2022, a U.S. Marshal served Babinski with a Writ of Execution at 78 Fir Road.[1] (*Id.* ¶ 9.) Babinski was asleep at that residence at the time, further evidence that Babinski did not reside at 21 Tiehack Court. (*Id.* ¶ 10.)

Babinski then amended his declaration. He stated that he did not in fact move to 21 Tiehack Court. (Doc. No. 135 ("Babinski Am. Decl.") ¶ 3.) Rather, he purchased Crooked Creek Guest Ranch at 76 Fir Road, resided at 82 Fir Road, and his mailing address was 21 Tiehack Court. (*Id.* ¶¶ 2-3.) He further clarified that he left for California on January 1, 2022, not December 28, 2021. (*Id.* ¶ 4.)

Based on Babinski's inconsistent declarations and his failure to withdraw his motion for relief, Christianson moves for sanctions. (Doc. No. 141.) The Court addresses each motion in turn below.

---

[1] Christianson conducted a search of the US Postal Service database, which confirmed that this is not a deliverable mail stop. (Wilson Decl. ¶ 31.)

## DISCUSSION

I.   **Motion for Relief from Judgment**

Babinski requests relief under Rule 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure.  Under this Rule, the Court may relieve a party from a final judgment upon a showing of "mistake, inadvertence, surprise, or excusable neglect" or for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (6).  "Relief under Rule 60(b) is an extraordinary remedy and will be justified only under exceptional circumstances."  *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 903 (8th Cir. 2005) (internal quotations omitted).

A.   **Excusable Neglect**

Babinski first argues that relief of judgment is warranted due to excusable neglect under Rule 60(b)(1).  In determining whether to relieve a party from a default judgment for excusable neglect, the Court considers the following factors:  (1) danger of prejudice to non-moving party; (2) length of delay and its potential impact on judicial proceedings; (3) reason for delay, including whether it was within movant's control; (4) whether movant acted in good faith; and (5) whether movant has a meritorious defense.  *Feeney v. AT & E, Inc.*, 472 F.3d 560, 562-63 (8th Cir. 2006).  A motion under Rule 60(b)(1) must be made "within a reasonable time" and "no more than a year after the entry of the judgment or order."  Fed. R. Civ. P. 60(c)(1).

The danger of prejudice factor slightly favors Babinski.  Delay alone is not enough to demonstrate prejudice.  *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998).  "Setting aside a default must prejudice plaintiff in a more concrete way, such as

6

loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (internal quotations omitted). While Christianson emphasizes the length of delay in this case, he has failed to explain how the delay has prejudiced him.

That being said, the length of the delay and its potential impact on the judicial proceedings favors Christianson. This case was filed three years ago. Due in large part to Babinski's failure to participate in this case, the parties have not yet meaningfully begun discovery. Moreover, the case has been closed for over a year. Overall, the length of delay is great.

The next two factors for the Court to consider are Babinski's reason for delay and whether he acted in good faith. "In determining whether a party has acted in good faith, [the courts] have consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a marginal failure to meet pleading or other deadlines." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) (internal quotations omitted).

In this case, the Court cannot conclude that this was a marginal failure. Babinski had notice of the case and even filed his own counterclaim against Christianson in March 2020. (*See* Doc. No. 4.) Then, inexplicably, Babinski stopped communicating with his counsel and the Court. While Babinski argues that he was unaware of the proceedings because the notices were sent to the incorrect email and mailing address, the record indicates that Babinski continued to reside at 76 Fir Road, where the notices were delivered. And he admits that he received some documents there. (*See* Babinski Decl. ¶ 5.) Moreover, Christianson's counsel spoke with Babinski on the phone on at

7

least one occasion and told Babinski about the outstanding discovery requests. Babinski appeared unwilling to participate in the litigation at that time, noting that he did not have time for a deposition. Before the hearing on Christianson's motion for discovery sanctions, Christianson's counsel left Babinski a voicemail, reminding him of the hearing. Babinski did not appear at the hearing, and he does not assert that he did not receive the voicemail. Overall, the Court's original conclusion stands: Babinski's noncompliance has been willful and knowing. He only now appears interested in this matter, only after a U.S. Marshal came to seize his property. At a minimum Babinski has shown an intentional "disregard for deadlines and procedural rules." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d at 867. That is enough for this Court to conclude that Babinski has not acted in good faith.

The final factor to consider is whether Babinski has a meritorious defense. Babinski argues that he has a meritorious defense because (1) the statements he made to police were made in good faith and thus protected by qualified privilege; and (2) the statements he made to other people were opinions. On this record, the Court cannot conclude that Babinski has a meritorious defense. Christianson alleges that Babinski told multiple members of the community that Christianson committed the burglary. (Compl. ¶ 80.) Christianson attached to his complaint declarations from people who attested that Babinski told them "[Christianson] did it" and further claimed that Christianson "was skipping down and 'fleeing' because he was guilty." (Compl., Exs. 2, 4.) A declaration further noted that Babinski was "going around town saying [Christianson burglarized his property]." (*Id.*, Ex. 4.)

8

While Babinski argues that this was his opinion, "expressions of opinion often embrace an assertion of objective fact, and may thus be actionable." *D.B. Indy, L.L.C. v. Talisman Brookdale LLC*, No. 04-cv-1023, 2004 WL 1630976, at *4 (D. Minn. July 20, 2004) (internal quotations omitted). Based on the allegations in the Complaint, Babinski was asserting an objective fact about Christianson—the fact that he burglarized Babinski's property and then fled. And Babinski has failed to "provide a sufficient elaboration of facts or evidence" that would permit this Court to conclude otherwise. *Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008).

Additionally, Babinski argues that his report to police was made in good faith. Courts must look at "whether the proffered evidence would permit a finding for the defaulting party." *Id.* (internal quotations omitted). Although Babinski asserts that his report to police was made in good faith, this assertion is "unsupported by specific facts or evidence." *Id.* Moreover, the crux of Christianson's defamation claim relates to statements Babinski made to members of his community. In sum, this factor favors Christianson.[2]

### B.  Mistake

Babinski also argues that the default judgment rests on erroneous applications of Minnesota law. Specifically, Babinski asserts that because his statements involved a matter of public concern, Christianson needed to prove that Babinski acted with actual

---

[2] In addition, Christianson argues that Babinski's motion is untimely because it was not made within a reasonable time. Because the Court denies Babinski's motion on other grounds, the Court need not address this argument.

9

malice.  "[T]he boundaries of the public concern test are not well defined." *City of San Diego v. Roe*, 543 U.S. 77, 83 (2004).  The Court must consider the "content, form, and context" of the speech to determine whether it concerns a public matter.  *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985).  Additionally, the Supreme Court has explained that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community" or when it is "a subject of general interest and of value and concern to the public."  *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal quotations omitted).

In this case, Babinski and Christianson were close friends and did business together.  (Compl. ¶¶ 22-24.)  Their friendship ended when Babinski's property was burglarized.  (*Id.* ¶¶ 22, 50.)  Christianson alleged that "while [Babinski] was drinking at the local bar," he told people that Christianson burglarized his property.  (*Id.* ¶ 81.)  While, as "a general proposition," the content of this speech may have been of interest to the public, "the Court's examination [i]s not limited to the subject[] of the [speech]." *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 881 (Minn. 2019).  Here, the form and context of the speech do not support a finding that the speech concerned a public matter.  The context of the speech involves Babinski and Christianson's personal and work relationship, which was well known in the community.  Moreover, the form of the speech was not meant to "reach as broad a public audience as possible," as Babinski made the comments at a bar.  *Snyder*, 562 U.S. at 454.  He did not, for example, publish his statements online or in a newspaper.  The Court concludes that the "thrust and dominant theme" of the speech was "personal in nature." *Johnson v. Freborg*, 978

N.W.2d 911, 922-23 (Minn. Ct. App. 2022) (holding that a student's post on social media, accusing her dance instructor of sexual assault, was not a matter of public concern given the content, form, and context of the speech).

Even if Babinski's speech constituted a matter of public concern, the allegations in the Complaint support a finding of actual malice. Actual malice means that the speech was done "with knowledge that it was false or with reckless disregard of whether it was false or not." *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 956 (8th Cir. 2020) (internal quotations omitted). Christianson alleged that Babinski told people that Christianson burglarized his property "without reasonable or probable cause because of the recklessly negligent investigation and hasty conclusions of [the private investigators]." (Compl. ¶ 81.) Moreover, Babinski "continued to state to others that [] Christianson may still have participated in the burglary" even after he learned that the "actual burglary suspects" were arrested. (*Id.* ¶ 83.) Thus, the facts in the record demonstrate actual malice.

Additionally, Babinski argues that the facts in the Complaint do not support a claim for intrusion upon seclusion. Even if the Court agreed with Babinski, this would not change the damages award, as Christianson's defamation claim is supported by the record. Thus, this argument does not provide a basis for the Court to vacate the default judgment.

### C.  Other Reason that Justifies Relief

Lastly, Babinski argues that other reasons justify relief, as these state-law claims should be resolved in state court. Babinski argues that the only issues before the Court

*currently* are state-law claims; however, at the time of the default judgment, several federal claims against Babinski and other Defendants remained pending before the Court. The state-law claims were related to those federal claims, such that "they form[ed] part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Babinski has failed to explain how the Court abused its discretion when exercising supplemental jurisdiction over these state-law claims.

In sum, Babinski has failed to demonstrate that relief from judgment is warranted, and the Court therefore denies his motion for relief from judgment.

### II.   Motion for Sanctions

Based largely on Babinski's inconsistent declarations, Christianson has filed a motion for sanctions. Rule 11 provides that, by presenting a motion to a court, the attorney certifies that to the best of that person's knowledge, information, and belief, formed after an inquiry under the circumstances, "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). To satisfy the requirements of Rule 11, an attorney must conduct a reasonable inquiry into the factual basis for a claim. *See Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). In determining whether sanctions are warranted, the Court considers "whether a reasonable and competent attorney would believe in the merit of [the] argument." *Id*. (internal quotations omitted).

In this case, the Court concludes that sanctions are not appropriate. As Babinski notes, his motion for relief from judgment is based on more than his alleged change of

address. For example, Babinski asserts that the default judgment rests on erroneous applications of Minnesota law. This was not a frivolous argument, and it was not unreasonable for Babinski's counsel to believe in the merits of the argument. Moreover, it was not unreasonable for Babinski's counsel to "rely on a client for information as to the facts underlying" the motion. Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. While Babinski's declarations certainly damaged his credibility—and contributed to the Court's decision to deny his motion for relief from judgment—the Court cannot conclude that Babinski's counsel knew, or should have known, that Babinski's first declaration contained erroneous information. And again, his motion for relief was based on more than his change of address. The Court thus denies Christianson's motion for sanctions.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Babinski's motion for relief from judgment (Doc. No. [125]) is **DENIED**.

2. Plaintiff Christianson's motion for sanctions (Doc. No. [141]) is **DENIED**.

Dated: June 27, 2023                                s/Donovan W. Frank
                                                             DONOVAN W. FRANK
                                                              United States District Judge